UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
TOWN OF POUGHKEEPSIE,

                           Plaintiff,                    02 Civil 6995 (CLB)

            - against

                                                         *Memorandum and Order*

THOMAS ESPIE, BETTY ESPIE, PATRICK F. MOORE,
FRANK E. REDL, WILLIAM L. PAROLI, SR., FRANCES
L. RAUCCI as Administrator of the ESTATE OF BASIC
RAUCCI, FRED ANDROS, LAWRENCE KNAPP,
ROY C. KNAPP & SONS, INC., PETER R. CANTLINE,
JOHN V. KANE III, ROGER A. MASTRI, DONALD G.
TOMLINS, MARK T. JOHNSON, HAYWARD & PAKAN
ASSOCIATES, THOMAS MURPHY, MICHAEL DUNAGAN,
MARY MOORE, LORRAINE TRACEY, LOUIS MURASSO,
PATRICK HINKLEY, DENNIS LEARY, and PRESIDENTIAL
HOMES OF NEW YORK, INC.,

                           Defendants.
-----------------------------------------------------------------------x
<u>Brieant, J.</u>

        Pending before the Court and considered in this decision are two motions filed by

Defendants Betty Espie and Thomas Espie to dismiss Plaintiff's Amended Complaint

("Complaint").  By motion filed February 23, 2005 (Doc. No. 126), Betty Espie seeks dismissal

of the claims against the Espies based on applicable statutes of limitation.  By motion also filed

February 23, 2005 ( Doc. No. 125), Defendant Thomas Espie seeks dismissal of the fraud and

Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1961, et seq. ("RICO") claims

against the Espies for failure to state a claim and lack of FRCP Rule 9(b) specificity.


        Also, by motion filed March 25, 2005 (Doc. No. 131), the Espies seek dismissal of all

claims against them, arguing that the recent legal position taken in this case by Plaintiff's counsel that there was no Town authorization for the Purchase and Closing Agreements of the Espie properties, render the sale of the property null and void, and any claims based on such a void sale subject to dismissal. That motion remains open and is not considered in this decision.

Also pending in this case is a motion for summary judgment filed by Defendant Patrick Moore (Doc. No. 169) on September 1, 2005, not considered in this decision.[1]

On May 4, 2005, the Espies withdrew without prejudice a motion for partial summary judgment as to the Town's obligation to indemnify the Espies for their legal fees in this litigation under the terms of the Purchase Agreement.

By Memorandum and Order dated August 18, 2005, this Court gave notice pursuant to FRCP Rule 12(b) to the parties that Betty Espie's Motion to dismiss based on applicable statutes of limitation was converted into a motion for summary judgment and the parties were invited to provide the Court with any supplemental documentation if so advised, including any pertinent excerpts from depositions which have been scheduled by the Court as ongoing through September 2005.

During the course of this lawsuit, the Espies filed three separate actions for declaratory

---

[1]For ease of reference, the Court will cite to certain exhibits included in Mr. Moore's motion papers.

and other relief in the Supreme Court of the State of New York in Dutchess County. Among other relief, the Espies sought a court declaration that the Purchase Agreement was null and void, based on the Town's contention during this litigation that the Agreement was never authorized by the Town Board. In July 2005, the Supreme Court of the State of New York, County of Dutchess (Pagones, J.), dismissed each of the Espies' state court actions, in significant part because the actions were time barred.[2]

## Background

The following facts are undisputed or assumed true for purposes of these motions only. Plaintiff Town of Poughkeepsie ("Town") is a municipal corporation organized and existing under the laws of the State of New York. At relevant times, the Town was governed by an elected seven-member Town Board, consisting of Michael Dunagan, Mary Percesepe, Lorraine Tracey, Louis Murraso, Patrick Hinkley, Dennis Leary, and Thomas Murphy, who was the Town Supervisor from January 1, 1994 to December 31, 1999. By partial stipulation of discontinuance signed November 22, 2004, the Town discontinued the action with prejudice as against the former Town Board member Defendants and Town Supervisor Murphy, in exchange for a substantial monetary settlement.

Defendant Patrick F. Moore served as the Town Attorney for the Town from about January 1, 1994 to December 31, 1997, and as Deputy Town Attorney from about January 1,

---

[2] It is the understanding of this Court that no additional actions remain pending in the state courts, which might impact this Court's disposition of the motions before it.

1998 to December 31, 1999.

Defendant Frank E. Redl served as Deputy Town Attorney from January 1, 1994 to December 31, 1997, and as Town Attorney from January 1, 1998 to December 31, 1999.

Defendant William Paroli was the Town of Poughkeepsie Republican Committee Chairman from 1993 to May 1999, and was the Dutchess County Republican Committee Chairman from 1997 to May 1999. On February 18, 2000, Mr. Paroli pled guilty in a separate case in federal court to one Count of Interference with Commerce by Threat or Violence. The plea did not concern the transactions charged in this case. *See RICO Case Stmt. at* 27.

Defendant Fred Andros, now deceased, was the Water Superintendent of the Town of Poughkeepsie from 1993 to 1999. On May 27, 1999, Mr. Andros pled guilty in a separate case in federal Court to a single count of conspiracy (with Paroli) to obtain illegal payments from people doing business with the Town. By stipulation of discontinuance dated August 10, 2005, the Town discontinued with prejudice the case as against the Defendant Estate of Fred Andros.

Defendant Frances Raucci is the widow and Administratrix of the Estate of the late Basil Raucci, who served as the Tax Assessor of the Town of Poughkeepsie at relevant times, and as president or chief executive officer of Defendant Presidential Homes of New York, Inc., a defunct New York corporation.

Defendant Lawrence Knapp is an officer of Defendant Roy C. Knapp & Sons, Inc., a general contractor hired to perform renovations and remodeling at the Espie property.

Defendants Peter Cantline, John Kane, Roger Mastri, Donald Tomlins and Mark Johnson are partners of Defendant architecture firm, Hayward and Pakan Associates. The Court has been advised of a settlement agreement with these parties, but as of this date has not received documentation to that effect.

Defendants Thomas Espie and Betty Espie are individuals residing in Poughkeepsie, New York. They are the sellers of certain real property located on Tucker Drive in the Town of Poughkeepsie, which they sold to Plaintiff Town on September 18, 1996, giving rise to the claims asserted in this action.[3]

In or around 1994, Plaintiff Town of Poughkeepsie was in need of a building for use as a police and court facility and through the Town Board undertook a search for a suitable building. In its Amended Complaint, filed December 10, 2002, Plaintiff alleged that from 1993 to 1999, Defendants Paroli, Raucci and Andros conspired to use their positions of power to obtain bribe money and other things of value from the Town and others doing business with the Town, through extortion, bribery and fraud. Plaintiff alleges that the Espies also engaged in a scheme to defraud the Town of both money and the honest services of its municipal employees by

---

[3] The Court will refer to the transaction as a sale notwithstanding the dispute as to whether the sale should be deemed null and void due to claimed lack of formal Town Board authorization or for any other reason.

paying bribes to Paroli, Andros and Raucci in order to gain their support in causing the Town to agree to

lease the Espie Property with an option to purchase and to engage the Espies to renovate the property.

Plaintiff also alleges that the purchase was structured as a lease with option to buy, in order to allow the Town to circumvent the competitive bidding requirements of New York General Municipal Law §103 ("Wicks Law"), and that the understanding of the Espies, Paroli, Raucci, Andros, Moore, Redl and the Board members that the purchase option would be exercised by the Town as soon as the renovations were complete. Plaintiff alleges that it was arranged that the Espies would be paid extra money for work not actually performed, and that Defendant Lawrence Knapp agreed to use Defendant Contractor Roy C. Knapp & Sons, Inc., as a conduit for bribes to be paid to Paroli, Raucci and Andros via Defendant Presidential Homes of New York, Inc.

The Town alleges that Defendants Paroli, Raucci and Andros conspired and ultimately collected $100,000 in bribes from the Espies, $10,000 in bribes from Hayward & Pakan Associates and $27,800 in bribes from Roy C. Knapp & Sons, Inc, routing certain payoffs through Defendant Presidential Homes of New York, Inc.

At a public Town Board meeting on March 15, 1995, the Town Board unanimously resolved to authorize Town Supervisor Murphy to execute a one-year lease for the property and

improvements with an option to buy the property from the Espies for $5,350,000. Mr. Murphy executed the Lease Agreement on April 20, 1995.[4] *Burke Decl., Ex. F.* The stated monthly lease amount commencing May 1, 1996, was $48,750, and was prorated for earlier dates according to the degree of the completion of the Town's space. On May 30, 1995, Supervisor Murphy executed the Purchase and Sale Agreement ("Purchase Agreement"), giving the Town the option to purchase the Espie property for $5,350,000. *Burke Decl., Ex. G.*

In order to fund the purchase of the Espie property, the Town Board adopted a bond resolution at a public meeting on October 25, 1995 for the issuance of $6,000,000 serial bonds "to pay the cost of the purchase of a building located at 190 Van Wagner Road." On October 20, 1995, public notice of the bond resolution was sent for publication as a legal advertisement in the *Poughkeepsie Journal* and was posted on the Town Clerk's Bulletin Board. *Burke Decl., Ex. H.*

On April 15, 1996, at a public meeting, the Town Board adopted a second bond resolution for the issuance of $1,000,000 serial bonds "to pay part of the cost of the reconstruction of a building located at 190 Van Wagner Road." On April 10, 1996, public notice of the bond resolution was sent for publication as a legal advertisement in the *Poughkeepsie Journal* and was posted on the Town Clerk's Bulletin Board. *Burke Decl., Ex. I.*

By resolution adopted at a public meeting on July 17, 1996, the Town Board authorized

---

[4] The particular day of April 1995 on which the Lease Agreement was executed is absent from the first page of the document, but the attached notarization is dated April 20, 1995.

Supervisor Murphy to execute the Amended Lease Agreement. *Plaintiff's Resp. to Court Order, Ex. A.* On July 18, 1996, Supervisor Murphy executed an amendment to the April 1995 Lease Agreement, increasing the monthly rental price to $80,000. On July 18, 1996, Supervisor Murphy also executed an Amendment to the Purchase Agreement, increasing the purchase price of the Property to $6,950,000 (an increase of $1,600,000). *Burke Decl., Exs. J, K.* No actual resolution by the Town Board, which authorized the Amendment to the Purchase Agreement is found in the Minutes maintained by the Town Clerk. *See Plaintiff's Resp. to Court Order, ¶1.*

On September 18, 1996, Supervisor Murphy attended a Closing Agreement on behalf of the Town, where the purchase price of $6,950,000 was paid. *Id., Ex. B.* Also present at the closing in addition to the Supervisor were: Patrick Moore, Town Attorney; Denise Ackerman, Deputy Town Attorney; Frank Redl, Deputy Town Attorney; Larry Knapp; General Contractor; the Espies; Ted Finkelstein, Attorney for the Espies; John Kane, the Architect; Joe Debarnadinis, Title Closer; Jim Wojrowicz, Town Comptroller; Jim Pickles, Town Building Inspector; Tim Mertens, Officer of Key Bank; and Basil Raucci, Town Assessor. *Id., Ex. C.*

The Town alleges that bribe money and the resulting unjustified increase in renovation costs were incorporated into the $1.6 million price increase and that the purchase price therefore constituted an illegally inflated expense to the Town.

This lawsuit was based initially in large part on the Indictment in this Court of defendant Paroli. The Indictment under Docket No. S1 99 Cr. 876, filed on September 8, 1999, contained

a large number of counts. Count Eight pertains to the "Town of Poughkeepsie Police and Court Facility Individuals and Entities" and alleges that from 1995 thru 1997, in violation of § 1951(a) and (2) of Title 18 of the United States Code, Paroli and others obtained money "from the victims set forth below by implicitly and explicitly threatening them that their business interests in the Town would be adversely affected unless they provided said money and services."

Espies are not mentioned by name in the Indictment, and the way the allegations are structured they may be read to be the victims rather than co-perpetrators. As noted earlier, Mr. Paroli was not convicted on Count Eight, and the allegations in the Indictment are inadmissible as against the Espies on hearsay grounds.

The Indictment in the separate Conspiracy Count alleges in sub-paragraph ll of the specifications that "in/or about June 1995, Basil Raucci told [the Espies] that [they] would have to make a $100,000.00 payoff to be disguised as a political contribution to the Party." Subparagraph mm alleges that in/or about June 1995, Roy C. Knapp and Sons, Inc., the general contractor ... was told by the [Espies's] that Knapp would have to funnel the $100,000 payoff through its accounts" and subparagraph nn alleges that on/or about June 23, 1995, Basil Raucci collected a $50,000.00 check from a representative of Knapp made payable to Presidential Homes, a company under Basil Raucci's control, which represented part of the $100,000.00 payoff referred to at above paragraph 8(11), funneled through Knapp by the [Epsies]. Subparagraph oo alleges that on/or about August 15, 1995, Basil Raucci collected a $25,000.00 check from a representative of Knapp made payable to Presidential Homes, which

represented part of the $100,000.00 payoff referred to above in paragraph 8(11), funneled through Knapp by the [Espies]. Subparagraph pp alleges a $19,400.00 check from a representative of Knapp to Presidential Homes claimed to have been "funneled through Knapp by the [Espies]. All of this is hearsay as to the Espies. While it is understandable that the present Town officials, seeing these allegations, would regard them as sufficient basis for litigation, the allegations in the Indictment do not constitute proof even as to Defendant Paroli who was not convicted on Count Eight and certainly not as to the Espies.

Plaintiff also relies on the complaint of Special Agent O'Connor of the Federal Bureau of Investigation sworn to May 26, 1999 and filed in the *Paroli* case. Paragraph 28 of that Affidavit begins to discuss the Espie property. It alleges, without giving a source, that bribes and extortion money was collected by the tax assessor [Basil Raucci] in the amount of $137,800 "under the auspices of donations to the Party" and that, although some of the money did actually go to the Party, most was diverted to Presidential Homes or other entities connected with the tax assessor [Raucci]. The complaint alleges that Presidential Homes was a conduit through which money was funneled to William L. Paroli, Sr., the Defendant.

The source of this information is not clear from the Special Agent's Affidavit. Any testimony by Special Agent O'Connor in this case would likely be hearsay. Although discovery is not yet fully concluded, during the long time in which this civil litigation has been pending, the Town has failed to elicit any admissions or other credible evidence as yet which would be admissible at trial to show that the Espies made the payments as charged, or that they were

complicit in the criminal conduct of others.

Plaintiff Town brought this action seeking recovery of the public funds it alleges were illegally procured through a fraudulent and deceptive scheme conspired to achieve personal benefit for Defendants through bribes, kick backs, sham leases, mail fraud and circumvention of Town law. In its Amended Complaint, the Town alleged: RICO violations against all Defendants; violation of the Wicks Law by the Espies; Breach of Fiduciary Duty against the Town Board members, Mr. Moore, Mr. Redl, Mr. Andros and the Estate of Mr. Raucci; Attorney Malpractice against Mr. Moore and Mr. Redl; Fraud against the Espies; Breach of Contract against the Espies; Breach of Express and Implied Covenant of Good Faith and Fair Dealing against the Espies; Unjust Enrichment against the Espies, Mr. Paroli, Mr. Andros, the Estate of Mr. Raucci, and the contractors; Inducement of Breach of Fiduciary Duty against Mr. Paroli, Mr. Andros, and the Estate of Mr. Raucci; and finally Negligence against Mr. Moore, Mr. Redl, the Board members, the Estate of Mr. Raucci and Mr. Andros.

After the partial completion of Court-ordered depositions, determined to be necessary for any meaningful resolution of the several motions before the Court, the Town of Poughkeepsie has appreciably altered its litigation position and has effected material changes in its allegations as to the activities of the former Town Supervisor and other Board members. The Town now contends that the former Town Board members did not know of any bribery, extortion or criminality by the other Defendants.

Indeed, the Town now argues adamantly that the Town Board members did not and could not have known of the fraud and bribery connected to the transaction, due to the other Defendants' fraudulent concealment. In addition, as part of this major sea change, the Town now argues an alternative theory that at least several of the former Board members did know of the alleged Wicks Law violation, but were prevented from pursuing the Town's rights because then Town Attorney Moore told them the transaction did not violate the law. Because Plaintiff's RICO action is the jurisdictional hook by which Plaintiff filed its action in federal court, this Court must first look to the preliminary issue of whether the RICO action is time-barred.

*Standard for Granting Summary Judgment*

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of establishing that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

Once the movant has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). To satisfy this standard, the adverse party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *see also St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000).

*RICO Limitations Period* **(Doc. No. 126)**

The Espies and Mr. Moore argue that Plaintiff's RICO claim is time barred, and the Town argues that equitable tolling estops the Defendants from asserting a statute of limitations defense. The Town argues first that the people of Poughkeepsie and not the Town Board itself are the real parties in interest in this case. It argues that the action is timely because until a new Town Board and new Town Attorneys took office in January 2000, following the November 1999 election, no person authorized to act for the Town could reasonably have been expected to commence such an action, because all culpable Defendants fraudulently concealed their illegal activity from the public and the remaining Defendants and controlled the "relatively constant" former Board until December 31, 1999. The Espies and Mr. Moore counter that the Town knew or should have known about this large-scale purchase and any related facts and injuries because the lease agreements with options to purchase were authorized by Town Board resolution; the intention to purchase the property was made public by at least one response to a FOIL request; the bond issuances for purchase of the properties were authorized by Town Board resolution, including the second issuance to cover the allegedly illegal price increase; and legal notice of the

13

bond resolutions was published in the *Poughkeepsie Journal.*

The limitations period for a RICO action is four years. *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 156 (1987). Our Court of Appeals employs the injury discovery rule for determining when a RICO claim accrues. "[E]ach time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988). Under this rule, a Plaintiff may sue for any injury it discovers or should have discovered within the four years preceding the commencement of its suit, regardless of when the RICO violation actually occurred. *Bankers Trust, 859 F.2d at 1103.*

Plaintiff commenced this action on September 2, 2002 and accordingly could properly state a claim for any RICO injuries that it discovered or should have discovered between September 2, 1998 and September 2, 2002, and it is precluded from making a claim for any RICO injury discovered, or which should have been discovered, prior to September 2, 1998, unless Plaintiff can meet its burden of proving that equitable tolling should apply.[5]

---

[5] The Court disagrees with Defendant's contention that Plaintiff is barred from asserting a RICO claim where the statute of limitations has run on a predicate act. The four year limitations period for civil RICO, set forth in *Agency Holdings*, *supra*, trumps the expiration of a limitations period for the underlying predicate act. *See e.g. Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989) (Supreme Court's ruling in *Agency Holdings* rendered moot defendant's contention that RICO claim was barred by expiration of the two-year statute of limitations for predicate act of fraud).

The damages claimed under Plaintiff's RICO claim are for an illegally inflated purchase price for the property. The Town claims that it was damaged by Defendants' RICO violations in an amount no less than $1,737,800, which represents the price increase of $1,600,000 for allegedly unjustified additional renovation charges plus $137,800 of bribes, which Plaintiff alleges were incorporated into the purchase price for the Espie property. The Town's RICO claim accordingly accrued, at the latest, on September 18, 1996, the date on which the Purchase Agreement was executed and title was closed on the property. By this date at the latest, the Town incurred injury from an inflated purchase price.[6] Because the Town did not file this action until September 2, 2002, its RICO claim is definitively time-barred unless preserved by equitable tolling of the limitations period.

The limitations period for a civil RICO action may be tolled when a Plaintiff establishes both that there was "fraudulent concealment" of the violation and that plaintiff exercised "due diligence" to discover its claim. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997). "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36-37 (2d Cir. 2002) (citations

---

[6] The Town concedes that its RICO action accrued on September 18, 1996. *See Plaintiff's Oppos. Brief at 8.*

and quotations omitted).  Importantly, in *Klehr,* the Supreme Court held that "'fraudulent concealment' in the context of civil RICO embodies a 'due diligence' requirement." *Klehr,* 521 U.S. at 196.  The Court rejected the notion that fraudulent concealment is concerned only with the behavior of defendants, explaining that the behavior of plaintiffs in civil RICO actions is relevant, as such actions seek not only to compensate victims, but also to encourage victims or potential victims "diligently to investigate and thereby to uncover unlawful activity." *Id.* at 195

Assuming without deciding that the Town has adequately alleged fraudulent concealment on the basis that certain acts of fraud are known only to the actors, the Court concludes that the Town has not adequately alleged or shown that it exercised the requisite due diligence to toll the running of the RICO limitations period.

In its Amended Complaint, the Town alleged upon information and belief that Thomas and Betty Espie "engaged in a scheme" to induce the lease and purchase agreements and that "Defendants Espie conspired with the Town Board to make false statements designed to induce members of the public and Plaintiff Town to believe that the agreements executed by the Board and Defendant Espies were not in violation of any law and were valid contracts." *Complaint at 143, 153, 223.*  It alleged that the deception was continued until December 31, 1999, and that because of the Espies' and other Defendants' control of the Board and active concealment from the public until that time, the Town did not discover, and through diligent efforts, could not have discovered any RICO violations until some time after December 31, 1999.  *Complaint at 211.*

Following the acquisition of additional knowledge as a result of this Court's directive to conduct depositions of the former Defendant Town Board members, the Town has substantially reframed its argument supporting equitable tolling of the RICO limitations period. As noted above, the Town originally pled only that it did not discover, and could not have discovered with diligent efforts the RICO violations. This did not constitute a sufficient pleading or showing that due diligence was exercised. *See e.g., Simpson v. Putnam County National Bank of Carmel*, 20 F.Supp.2d 630 (S.D.N.Y. 1998) (Parker, J.) (the Court will not read assertions of due diligence into a plaintiff's complaint where it is only asserted that plaintiff could not have discovered by due diligence the existence of a conspiracy). Following depositions, however, the Town now argues that one or more Board members *did* employ due diligence, for example, by asking the Town Attorney whether the purchase complied with the Wicks Law and by questioning a delayed FOIL response to an attorney who asked for copies of the contract documents. It argues that despite these inquiries, the Board members were victims of Town Attorney Moore's fraudulent concealment of a Wicks law violation and a related RICO violation.

The Town argues that prior to January 2000, nobody authorized to act for the Town (i.e., no Town Board member) could "reasonably" have been expected to commence an action and that there was, therefore, no mechanism for review and questioning of the Espie sale. *See Oppos. Memo at 5, 7.* It argues that the Town Board was under the control of those involved in a RICO conspiracy, and that the limitations period should not be deemed to have run before a "body ready, willing and able to act entered office in January 2000." *Id. at 12.* The Court does not agree that there was no mechanism that was in place nor that the claimed lack of a Board

"ready, willing, and able" to sue should toll the expiration of the limitations period in this case. There was a mechanism in place. That mechanism was the Town Board, which Plaintiff now acknowledges was comprised of honest, even if negligent, members.

The Town alleges that nothing of benefit or value was ever received for the $1.6 million illicit increase in the purchase price. *See Amended Complaint at ¶¶ 100, 255, 273; RICO Case Stmt. at 4, 28-29.* The increase was originally represented to be necessary for unanticipated or underestimated renovation needs, including heating, ventilation, conversion of a pole barn on the property into an automobile maintenance center, installation of a more extensive telecommunications system and the purchase of an emergency power backup system. *Complaint at ¶96.* When the purchase price was substantially increased by $1.6 million and additional bond resolutions were passed to account for such an increase, one or more of the Board members, now understood not to have been acting as co-conspirators, should have, in the exercise of ordinary care, investigated and considered the legitimacy and need for the significant price increase, discovered if it was not legitimate, and continued to investigate.

Also, as earlier noted, the Town closed title on the property on September 18, 1996. It recorded the deed on September 19, 1996. The improvements allegedly necessitating the price increase were either performed or they were not. The Town has failed to indicate whether there is or is not an emergency power backup system in place, or whether the pole barn has been meaningfully renovated to serve as an automobile maintenance center. "As noted by the Second Circuit [in *Armstrong v. McAlpin*, 669 F.2d 79 (2d. Cir. 1983)] where the circumstances are such

18

as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Prestandrea v. Stein*, 262 A.D.2d 621, 622 (N.Y. App. Div. 1999) (citations omitted).  It was incumbent upon the Town to ascertain at the time of the closing whether improvements necessitating the price increase were or were not at least substantially completed.  The discovery of incomplete or totally unperformed improvements would presumably have alerted the Town to the possibility of a fraudulently inflated purchase price.

Each Board member, even if intimidated or "controlled" by other Defendants, as alleged, had a fiduciary duty to investigate and report suspicions to other Board members or to the District Attorney of Dutchess County or the Attorney General of New York.  Neither the existence of a dominant political party nor widespread corruption, if such there were, relieves a Town Board member of his or her fiduciary duty to exercise due diligence in authorizing and conducting municipal business.

Indeed, in its Amended Complaint, the Town also alleged negligence and breach of fiduciary duty against the Board members, asserting their legal liability for failure to investigate, review and analyze the Lease and Purchase Agreement prices, the subsequent increase in those prices, the basis for the additional $1.6 million price increase and the legality of the Agreements,

*vis a vis* General Municipal Law.[7]  As noted, the Town's insurance carrier paid the Town a

significant settlement sum, which must have been for negligence and breach of fiduciary duty

claims, because RICO activity, involving moral turpitude, could not have been insured.  As part

of the settlement agreement, the Town agreed to hold these former Board members harmless

against further liability for their alleged RICO activity, negligence and breach of fiduciary duty.[8]


Notably, the Town's pleadings illustrate that three of the Defendant Board members were

replaced by independent Board members not sued, before December 31, 1999.  Defendant Leary

was replaced as of December 1, 1996, Defendant Murasso was replaced as of January 1, 1998,

and Defendant Hinkley was replaced as of March 3, 1999.  None of their successors as Board

members is named as a defendant in this litigation, and presumably therefore, were not

participants in the claimed fraud.  Even if the Defendant Board members were conducting RICO

activity as originally alleged (but now effectively retracted), it cannot be said that innocent

Board members should not reasonably have been expected to employ due diligence and report

any questionable activity to the District Attorney or Attorney General of New York.  This would

naturally include an obligation to ensure that a price increase of nearly 30% was justified, and

that the renovations necessitating such an increase were performed.

---

[7] The Court acknowledges that a party may plead alternative claims, but in this case notes
that the Town's alternate pleadings support the Court's reasoning.

[8] That settlement agreement results in the rather awkward situation in which the Plaintiff
Town's counsel in this lawsuit is also now counsel for these former defendant Board members.

The Town also makes an unconvincing argument that it should be relieved of its obligation to have timely pursued its rights because one or more of the former Board members was "pressured" into voting for the purchase. It argues that "Mr. Paroli expressly threatened and forcefully coerced certain members of the Town Board to support the purchase of the Espie Property." *Plaintiff's Oppos. Brief at 16.* The fact that certain Board members in office through December of 1999 may have felt political pressure from Mr. Paroli into casting certain votes does not serve to toll the RICO limitations period. Indeed if they were pressured, then it is likely they were on notice that there might be something questionable about the transactions and that the pressure must originate in some self-interested stake in the outcome.

Neither does the Town's new argument that the former Board members inquired into the legality of the transaction *vis a vis* the New York Wicks Law rise to the level of diligence required to toll the limitations period for its RICO claim. The Town now argues that one or more Board members questioned Town Attorney Moore as to compliance of the transaction with the Wicks Law, but justifiably relied on Mr. Moore's response that the transaction complied with that law. It argues that the Town was thereby prevented from pursuing its rights. Assuming that the Town's argument regarding inquiry into the Wicks Law issue goes to the question of whether to toll the RICO limitations period, the Court must conclude that it urges against tolling of the limitations period. It again illustrates that honest Town Board members had notice of possibly illegal behavior. "A principal is bound by notice to or knowledge of his or her agent in all matters within the scope of the agency,...the knowledge or notice of the agent is imputed to the principal and is therefore constructive notice." 2A NY Jur. 2d §296. The public elected the

Defendant and non-Defendant Town Board members, all of whom at once cannot be deemed to have been rendered helpless because of alleged intimidation. The existence of suspicions by what the Town now considers honest Board members and the Town's claim that Mr. Paroli pressured Board members for votes illustrates that the Town had notice, through its honest Board members of a possible RICO injury. "The rule imputing knowledge or notice of an agent to the principal includes and applies to ... actual or constructive notice communicated to the agent." *2A NY Jur 2d §300.* "While the failure of an agent to communicate [] information acquired by the agent in the course and within the scope of the agency is a breach of duty to the principal, the notice has yet the same effect as to third persons as though the agent's duty had been faithfully performed." *Id.*

The Town argues also that Mr. Moore sent the Board members a memorandum in which he specifically stated that the Town intended to purchase the property rather than lease it, but that this should not be made public. While this goes directly to the issue of a Wicks Law violation, it provides an additional basis from which to conclude that honest Board member agents of the Town had notice of any such violations.[9]

---

[9] Labor unions and the construction industry have a significant interest in the Wicks law, which was intended to stop corrupt government contracting and to obtain public construction at the lowest possible cost to municipalities. However, there are resulting inefficiencies from divided contract responsibility so that municipalities are inconvenienced by and generally opposed to the Wicks law. *See e.g. City of New York State Budget Initiatives and Analysis of Executive Budget - State Fiscal Year 2005-2006,* "*Wicks Law Repeal*" http://www.nyc.gov/html/omb/pdf/nysbudanl02_05.pdf ("Full repeal would provide the City with over $2 billion in capital construction cost savings over the next ten years").

Under New York agency law, such notice to its agents must be imputed to the Town as principal. *See 2A NY Jur 2d §§ 296, 300* ("notice received [] by an agent engaged in his or her principal's business, which should have put the agent on inquiry, is deemed to be notice or knowledge of his or her principal of material facts which the agent would have discovered had the agent inquired.")

The Town also argues that the public was kept in the dark because in May of 1996, Ann Barcher, a citizen of the Town of Poughkeepsie who later became Town Supervisor, requested copies of the lease with option to purchase and the Town Board resolution relating to the lease agreement. When Mr. Moore delayed providing the requested information until the amended agreement was executed, one or more Board members questioned the propriety of the delay. Mr. Moore indicated that the information was not public while negotiations were in progress, but did approve hand delivery of the requested documents on July 18, 1996, after the Amendments were executed. Even assuming Mr. Moore culpably delayed providing the FOIL response with details of the Agreement, the inquiries of honest agents of the Town (i.e., one or more Board members), illustrate that the Town had constructive or actual notice of possible illegal activity before September 18, 1996. In any case, the information as to the increased purchase price was provided to Town resident Barcher and thereby made public on July 18, 1996, upon Supervisor Murphy's delivery to her of copies of the original and amended Lease and Purchase Agreements.

The Board members and the public had contemporaneous constructive, if not actual knowledge of the plan to purchase the property and should have known whether the price

increasing renovations were or were not completed. Equitable tolling does not save this RICO claim, because the Town failed to employ due diligence in the investigation of an illegally inflated purchase price and is therefore time barred.

Finally, even if the Court were to assume *arguendo* that fraudulent concealment at least during some period of time *did* effectively prevent the Town from timely asserting a claim, Defendants have shown that as early as April 5, 2001, Mr. Richard Pu, a Town-paid attorney, conducted research at the request of Ann Barcher, then Town Supervisor, on the subject of the statute of limitations applicable to a RICO claim. *McCulloch Decl., Ex. 9.* The same exhibit reveals that Mr. Pu met with Ms. Barcher as early as April 9, 2001, to discuss the statute of limitations for a RICO action. This compels an inference that in early April of 2001, the new Town Supervisor was undeniably on notice of both a possible RICO injury and the RICO limitations period. Accordingly, this Court cannot conclude that the new unconflicted Town Board acted diligently by filing suit on an already-expired RICO action in September 2002, almost one and a half years after receiving legal advise on the issue from Attorney Pu.

The Supreme Court has deliberately emphasized that in the context of a civil RICO case, the bar is raised in terms of a Plaintiff's obligation to act swiftly and with diligence to ascertain and act on a RICO injury. The Town does not dispute that this was a large transaction for a small community, that there was pubic notice of bond issuances for the purchase, and that Ms. Barcher did receive a response to her FOIL request on July 18, 1996. "Even when [fraudulent] concealment exists, the party seeking the benefits of equitable tolling must have acted reasonably

to discover the facts and to protect its rights." *Bowers v. Transportacion Mitima Mexicana*, S.A., 901 F.2d 258, 264 (2d Cir. 1990). *See also Klehr,* 521 U.S. at 194 (in the context of civil RICO, a plaintiff who is not reasonably diligent may not assert fraudulent concealment). The "failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely 'a self-inflicted wound.'" *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 887 (2d Cir. 1988) (citation omitted).

The Town failed to adequately establish that it exerted due diligence as required to toll the limitations period for its civil RICO action. The Court concludes that there is no genuine issue of material fact as to whether equitable tolling should apply to the limitations period for Plaintiff's RICO action, and that it does not.

For the foregoing reasons, the Court is constrained to conclude that the four year limitations period bars Plaintiff's RICO claim as against all Defendants, and it must be and is hereby dismissed as time barred.

*Failure to State a RICO Claim* **(Doc. No. 125)**

Alternatively, the Court now considers whether as now reconfigured by Plaintiff, the Complaint states a valid RICO claim. Plaintiff charged Thomas and Betty Espie with RICO violations under 18 U.S.C. §§1962(b) & (d). The Espies originally filed a motion on November 4, 2002 to dismiss the fraud and RICO allegations for failure to state a claim. That motion was

withdrawn without prejudice and Plaintiff was instructed to file a RICO case statement, which was filed on February 10, 2003. The Espies subsequently renewed their motion to dismiss, directed to the Amended Complaint.[10] Among other arguments, the Espies argue that Plaintiff's RICO action against them should be dismissed because the Town has failed to demonstrate continuity and has failed to allege that the Espies acquired or exerted control over a RICO enterprise, as required by 18 U.S.C. § 1962(b).

Dismissal under [Rule 12(b)(6)] is proper where the plaintiff cannot recover on the facts he has alleged, accepting those facts as true. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The focus of the Court's inquiry is not whether plaintiffs will ultimately prevail, but whether the claimants are entitled to an opportunity to offer evidence in support of their claims. Therefore a motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

> To state a claim for damages under RICO a plaintiff ... must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c) (1976).

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).

---

[10]The motion filed by Thomas Espie is treated as filed by both Espie Defendants. *See Plaintiff's March 28, 2005 Memo. in Opposition at 19* ("Thomas and Betty Espie both executed all of the agreements which form the subject matter of the instant litigation.").

As earlier noted, the Town has effectively reconfigured its RICO claim following depositions of the defendant Town Board members. The Town no longer claims that any of the Board members were knowingly involved in RICO activity but still argues that "the predicate acts committed by [the Espies] were part of a scheme directed by Paroli, Raucci and Andros, by which these individuals manipulated the Town Board for their direct financial and political gain." *March 28, 2005 Memo. in Oppos. at 14.* The Town's original RICO Case Statement alleged upon information and belief that the predicate RICO acts of the Amended Complaint revolved around the common plan of all Defendants to overcharge the Town of Poughkeepsie for the purchase and renovation of the Espie property and this was accomplished by multiple acts of bribery, mail fraud and bank fraud. *RICO Stmt. At 18.* Plaintiff asserts that the alleged predicate acts constitute open-ended continuity for purposes of establishing a pattern of RICO activity. *Id. at 27.* The Court disagrees.

"To establish a pattern, a plaintiff must [] make a showing that the predicate acts of racketeering activity by a defendant are "related, and that they amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). To establish open-ended continuity, Plaintiff must show that "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id.*, *citing 492 U.S. 229, 242-243*. Plaintiff has not shown such continuity.

Plaintiff's allegation of the common plan to purchase and renovate the Espie property illustrates a one-shot fraud. The cost-increasing schemes alleged against the Espies go in their

entirety to the execution of a single, terminable goal of purchasing and renovating the Espie property as a Town building.  Plaintiff has not alleged a sufficient continuity or threat of continuity to sustain a RICO action based this finite single transaction.

Plaintiff's claim also requires a showing that the Defendants acquired or maintained an interest in or control of the RICO enterprise.  Plaintiff defines the RICO enterprise as the "Plaintiff Town of Poughkeepsie, which acts by its Supervisor, Town Board members, and employees and agents."  *RICO Case Stmt. at 12, 31*.  The Town now argues that the Town Board members were not involved, and by implication contend that the Espies were part of a scheme directed by Paroli, Raucci and Andros, by which these individuals manipulated the Town Board and other Defendants for their direct financial and political gain.  *March 28, 2005 Memo. in Oppos. at 14*.  Plaintiff alleges, however, at the same time, that the enterprise, directed by Paroli, Raucci and Andros extorted $100,000 of bribe money *from the Espie Defendants*. *See Amended Complaint at ¶ 273; RICO Stmt. at 19* ("Thomas Espie and Betty Espie were instructed to make $100,000 payment to Presidential Homes of New York, Inc., a corporation under the direction and control of Raucci.")*.  Plaintiff also alleges that Paroli, Raucci and Andros exerted their influence and power, by virtue of their positions as [] public officials to ensure that Defendants Thomas Espie and Betty Espie retained Defendant Hayward and Pakan Associates and Defendant Roy C. Knapp & Sons to perform renovation work on the Espie property.  *See Amended Complaint at ¶¶ 83, 85, 87, 89; RICO Case Stmt. at 7, 8*.  These allegations effectively treat the Espies as victims of RICO enterprise activity, and not holders of an interest in or control of the alleged RICO enterprise.  The Town's allegations of bribery by the Espies do not defeat

28

this deficiency.

This Court concludes that the Town has failed to state a viable RICO claim upon which relief may be granted, due to a failure to adequately plead continuity and the acquisition of an interest in, or control over the alleged Town enterprise by the Espies. If the RICO claim were not time barred, it should be dismissed as against the Espies for failure to state a claim upon which relief can be granted.

Accordingly, Motions (Docs.125 and 126) are granted as to the RICO claim.

The Court is in no position at this time to enter any final judgment, nor is there any basis for the Court to make the finding contemplated by Rule 54(b) Fed. R .Civ. P. Remaining open and unresolved are a Motion to Dismiss (Doc. 131) by the Espies, as well as the Motion for Summary Judgment by defendant Moore (Doc. 169). Also, it is unclear at this time whether the Court in its discretion should continue to exercise supplemental jurisdiction over the Second Claim in the Amended Complaint, for a Wicks Law violation against the Espies, the Third Claim, for breach of Fiduciary duty, which apparently remains open at least against Defendants Moore, Redl and the Estate of Basil Raucci, or the Fourth Claim of attorney malpractice against defendants Moore and Redl.

Insofar as concerns the Fifth Claim, for fraud against the Espies, that claim is dismissed

as time barred for the same reasons developed above. The same is true as to the Sixth Claim, against the Espies for Negligent workmanship, the Seventh Claim, against the Espies for breach of the covenant of good faith and fair dealing, and the Eighth, Ninth and Tenth Claims, for unjust enrichment, inducement of breach of fiduciary duty and negligence, stated against various defendants.

The Espies' Motion (Doc. 131) to declare the sale null and void would appear to this Court to be barred as a result of issue preclusion arising from a July 2005 adjudication in the New York Supreme Court Dutchess County by Justice Pagones. However, this is far from clear on the present record and if that is the position of the Town, adequate documentation to support it is not before the Court. Counsel are directed to confer on this and related subjects and advise the Court.

Implicit is the likelihood that the Espies' prior motion for indemnification, which was withdrawn without prejudice, will be reinstated at least as to the RICO claim.

Counsel are directed to conclude the presently Court ordered depositions in this matter and address the remaining issues which must be resolved in order that a final appealable judgment for the entire case may be entered.

A status conference with the Court will be held on November 18, 2005 at 11:30 a.m. and

must be attended by the attorneys for all parties then remaining in the case. The conference previously scheduled for October 28, 2005, is rescheduled for November 18, 2005.

X

      X

           X

                X

                     X

                         X

                              X

SO ORDERED.

Dated: White Plains, NY
       September 28, 2005

31

SO ORDERED.

Dated: White Plains, NY
September 28, 2005

Charles L Brieant

Charles L. Brieant, U.S.D.J.